SANDRA C. ISOM, Bar No. 157374
E-mail: scisom@fedex.com
R. JEFFERY KELSEY (*pro hac vice*)
E-mail: jkelsey@fedex.com
EMILY C. PERA (*pro hac vice*)
E-mail: emily.pera@fedex.com
P. DANIEL RIEDERER (*pro hac vice*)
E-mail: daniel.riederer@fedex.com
Federal Express Corporation
3620 Hacks Cross Road
Building B, 3rd Floor
Memphis, TN 38125
Telephone: 901/434-8600
Facsimile: 901/434-9271

DAVID S. WILSON, III, Bar No. 174185
E-mail: dwilson@fedex.com
Federal Express Corporation
2601 Main Street, Suite 340
Irvine, CA 92614
Telephone: 949/862-4656
Facsimile: 949/862-4605

Attorneys for Defendant
FEDERAL EXPRESS CORPORATION

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL FORRAND, ARA KARAMIAN, YVETTE GREEN and EUGENE COLON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL EXPRESS CORPORATION,<br><br>Defendant. | Case No. CV08-1360 DSF (PJWx)<br><br>**DEFENDANT FEDERAL EXPRESS CORPORATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: April 15, 2013<br>Time: 1:30 p.m.<br>Ctrm: 840, 255 E. Temple Street<br><br>Trial Date: None |

1

# **TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT...............1

II.     STATEMENT OF FACTS.......................................................................2

    A. Procedural History.............................................................................2

    B. FedEx Policy is to Pay for All Time Worked...............................3

    C. Procedures for Time Clocks Varied...............................................3

    D. FedEx's Scanning Devices and Time Keeping Systems...................5

    E. The Foster Data is Relevant Only to Illustrate the Type of
       Data FedEx Keeps.............................................................................6

III.    LAW AND ARGUMENT...................................................................... 6

    A. Rule 23 Standard.............................................................................7

    B. The Ninth Circuit's Instructions Do Not Compel a Different
       Result.................................................................................................7

    C. Green's Proposed "Unpaid On-The-Clock" Class Should Not
       Be Certified.......................................................................................9

       1. Green Cannot Demonstrate Commonality...............................9

       2. Green Cannot Demonstrate Predominance or Superiority.............13

            (a.)   A determination of control requires individualized inquiries...14

            (b.)   Punching-in does not automatically establish control...........15

            (c.)   Class treatment is not a superior method of adjudication.......19

       3. Foster and Post-Foster Changes are not Determinative..................20

    D. Green's Proposed "Working Meal Break" Class Should Not
       Be Certified.....................................................................................21

       1. Green Cannot Demonstrate Commonality...............................21

       2. Green Cannot Establish Predominance or Superiority.................22

       3. Green is not a Proper Class Representative............................25

IV.     CONCLUSION..................................................................................25

## **TABLE OF AUTHORITIES**

**CASES**

Alcantar v. Hobart Serv., No. 11-1600,
2012 U.S. Dist. WL 5946129 (C.D. Cal. Nov. 28, 2012) ..........7, 12, 15, 17, 22

Alonzo v. Maximus, Inc., 832 F. Supp.2d 1122 (C.D. Cal. 2011).................. 16-19

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231,
138 L.Ed.2d 689 (1997)................................................................14, 19

Brinker Restaurant Corp. v. The Superior Court of San Diego Co.,
53 Cal. 4th 1004, 139 Cal Rptr. 3d 315 (Cal. 2012) .................................. 21-24

Brown v. Federal Express Corp., 249 F.R.D. 580 (C.D. Cal. 2008)....................24

Cervantez v. Celestica Corp., 618 F. Supp.2d 1208 (C.D. Cal. 2009)..................20

Cornn v. United Parcel Service, Inc., No. C03-2001,
2005 U.S. Dist. WL 2072091 (N.D. Cal. Aug. 26, 2005) .................... 13, 16-19

Cortez v. Best Buy Stores, LP, No. 11-5053, 2012 WL 255345
(C.D. Cal. Jan. 25, 2012) .................................................................22

Forrand v. Federal Express Corp., No. 09-55543, 2011 WL 4269401
(9th Cir. Jan. 5, 2011) ..............................................................2, 8, 9, 11

Foster v. Federal Express Corp., No. BC 282300, (Sup. Ct. L.A. Cty.,
Nov. 30, 2006). ..............................................2, 3, 5, 6, 8, 9, 20, 21

Garcia v. Sun Pacific Farming Cooperative, No. 06-0871,
2008 U.S. Dist. WL 2073979 (E.D. Cal. May 14, 2008) ................................13

Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 102 S.Ct. 2364,
72 L.Ed.2d 740 (1982)......................................................................25

In re Autozone, No. 10-2159, U.S. Dist. WL 6679983
(N.D. Cal. Dec. 21, 2012)..................................................................22

Jimenez v. Domino's Pizza, Inc., 238 F.R.D. 241 (C.D. Cal. 2006)....................14

Lindow v. United States, 738 F.2d 1057 (9th Cir. 1984) ....................................20

Morillion v. Royal Packing Co., 22 Cal. 4th 575, 94 Cal. Rptr.2d 3
(Cal. 2000) ............................................................................... 14-17

O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)............25

Ordonez v. Radio Shack, Inc., No. 10-7060, 2013 U.S. Dist. WL 210223,
(C.D. Cal. Jan. 17, 2013) .............................................................12, 22

Overton v. Walt Disney Co., 136 Cal. App. 4th 263, 38 Cal. Rptr. 3d 693
(Cal. App. 2006) ............................................................... 15, 17, 19

Pryor v. Aerotek Scientific, LLC, 278 F.R.D. 516 (C.D. Cal. 2011)....................19

Rosales v. El Rancho Farms, No. 09-707, 2012 U.S. Dist. WL 292977
   (E.D. Cal. Jan. 31, 2012) ..................................................................................25

Rutti v. Lojack Corp., Inc., 596 F.3d 1046 (9th Cir. 2010)...............2, 8, 10, 14, 15

See's Candy Shops, Inc. v. The Superior Court of San Diego,
   210 Cal. App.4th 889, 148 Cal. Rptr.3d 690
   (Ct. App. Cal. 2012) ........................................................10, 17, 18, 19

Sepulveda v. Wal-Mart Stores, Inc., 237 F.R.D. 229 (C.D. Cal. 2006)...............14

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541,
   180 L. Ed.2d 374 (2011)......................................7, 9, 10, 12, 13, 21, 22

Wang v. Chinese Daily News, Inc., No. 08-55483, U.S. App. WL 781715
   (9th Cir. Mar. 4, 2013)......................................................................................10

York v. Starbucks Corp., No. 08-7919, 2011 U.S. Dist. WL 8199987
   (C.D. Cal. Nov. 23, 2011)..................................................................................22

Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180 (9th Cir. 2001) .................19

## RULES

Fed. R. Civ. P. 23.....................................................................................7, 21

Fed. R. Civ. P. 23(a) ...................................................7, 13, 14, 20, 22

Fed. R. Civ. P. 23(a)(2).........................................................................9

Fed. R. Civ. P. 23(b) .............................................................................7

Fed. R. Civ. P. 23(b)(3) .......................................................7, 9, 14, 20

Fed. R. Evid. 407 .................................................................................21

## REGULATIONS

29 C.F.R. § 785.48................................................................................16

# I.  **INTRODUCTION AND SUMMARY OF THE ARGUMENT**

FedEx policies require payment for all hours worked, prohibit employees from working without pay, require employees to record all of their time worked, and require arrival not later than the employee's scheduled start time.  Notwithstanding those explicit policies, Plaintiff, Yvette Green ("Green"), seeks to certify a state-wide class action on the theory that FedEx employees in California worked before and after their shifts and during meal breaks without pay.  Green, a former Handler in Stockton, California, seeks to represent nearly 15,000 current and former FedEx employees who worked more than 3.5 million shifts in 142 different facilities, under different management, in approximately 60 job classifications with distinct job descriptions.

This Court previously denied class certification in this case because individual issues overwhelmed common issues.  Green has not introduced any new evidence, theories or common issues which would change this Court's first ruling.  Although the Ninth Circuit remanded the case with specific instructions, nothing in that court's ruling requires a different result here.

Green's efforts to certify a class fail for at least six reasons.  First, Green cannot provide convincing proof of any common policies exercised in a common manner to deprive employees of pay for compensable time.

Second, whether FedEx exerted sufficient control over putative class members who chose to punch-in prior to their start times requires individualized inquiries to determine if the time was compensable that predominate over any common issues.

Third, whether putative class members worked during their unpaid meal breaks, and whether FedEx knew or should have known of that work, requires individualized inquiries that predominate over any common issues.

Fourth, the conflicting evidence and individual inquiries necessary to decide this case make it unmanageable as a class action.

Fifth, Green is not a proper representative for the second class she seeks to certify because there is no scan data appearing in any of Green's meal breaks.

Finally, Green's reliance on data from <u>Foster v. Federal Express Corp.</u>, No. BC 282300 (Sup. Ct. L.A. Cty., Nov. 30, 2006) is misplaced because the job duties and scan data of employees in this case differ significantly from the <u>Foster</u> class.

This Court should again deny Green's motion for class certification.

## II. <u>STATEMENT OF FACTS</u>

### A. <u>Procedural History</u>

Four plaintiffs sued FedEx in February 2008, alleging that FedEx failed to provide meal and rest breaks, failed to pay for all hours worked, and engaged in unfair business practices. (Dkt. 1, 2). The Court denied Plaintiff's first motion for class certification, and dismissed the action for a lack of subject matter jurisdiction in March 2009. (Dkt. 47, 51). In denying class certification, the Court determined that individual issues predominated, and that a class action was not a superior method of adjudication. (Dkt. 47). As to the claim for alleged failure to pay for all hours worked, the Court determined that the plaintiffs did not produce common proof, and that individual inquiries for each class member were necessary to determine what employees did between their punch-in time and their start time, and between their end time and their punch-out time. (<u>Id.</u>) The Court concluded that it would be "mired in thousands of mini-trials regarding payable work performed by employees." (<u>Id.</u>)

On appeal, the Ninth Circuit affirmed in part, reversed in part, and remanded in part. <u>See Forrand v. Federal Express Corp.</u>, No. 09-55543, 2011 WL 4269401 (9th Cir. Jan. 5, 2011). The Ninth Circuit made three findings that are relevant to Green's current class certification efforts. First, the Ninth Circuit instructed this Court to apply the standard set forth in <u>Rutti v. Lojack Corp., Inc.</u>, 596 F.3d 1046 (9th Cir. 2010) to determine whether the level of FedEx's control over employees when they are on-the-clock but off-shift is sufficient to render the time compensable under California law, even if they are not working. <u>See Forrand</u>, 2011 WL 4269401, *1-2.

Second, Green could not be excluded as a class representative because she worked as a Handler, but the Ninth Circuit did not otherwise address the adequacy of

DEFENDANT'S OPPOSITION TO PLAINTIFF'S                    2                    CV08-01360 DSF (PJWx)
MOTION FOR CLASS CERTIFICATION

1    her class representation.  Id. at *1.

2            Third, the Ninth Circuit explained that Courier and Service Agent data from the

3    Foster case was relevant *only insofar* as it demonstrated that FedEx had access to that

4    same source of data in this case.  Id. at *2.  Significantly, the Foster data pertained

5    only to FedEx Couriers and Service Agents, and this case specifically excludes

6    Couriers and Service Agents. (Dkt. 2, ¶8).  Therefore, the Ninth Circuit did not rule

7    that the Foster data demonstrated common proof of wage and hour violations, or that

8    the Foster data had any other relevance to the certification analysis or the merits of

9    this case.

10           Following the Ninth Circuit's remand, Green is the only remaining class

11   representative.  She filed her second motion for class certification in January 2013.

12   (Dkt. 116).  In that motion, Green omits her meal and rest break claims, and only

13   seeks to certify two classes.  The first class includes California employees who used

14   FedEx's FAMIS timekeeping system who were paid from their scheduled start time to

15   their scheduled end time, instead of from their punch-in to punch-out times.  (Dkt.

16   117, p. 3).  The second class includes California employees who used FAMIS and

17   who worked during their unpaid meal breaks.  (Id.)

18           Green's proposed classes potentially implicate nearly 15,000 current and former

19   non-exempt employees within 60 job classifications, all with distinct job descriptions.

20   (Declaration of Michael P. Ward, ¶¶10-11, attached as Exh. B; Declaration of

21   Marseah Farmer, ¶¶3-4, Exhs. 1-2, attached as Exh. C).  In addition to the tremendous

22   variety of employees and jobs, Green's proposed classes include employees in most

23   FedEx locations in California, each of which has different facility sizes, number of

24   employees, package volume, customer demands, managers, and managerial

25   expectations.  (Farmer Dec. ¶¶3-4, Exhs. 1-2; Declaration of Ronald J. Carlson, ¶5;

26   Declaration of Elizabeth Mason Dec. ¶17-50; Declarations of FedEx Managers, *in*

27   *passim*; Declarations of Hourly Employees, *in passim*).[1]

28   [1] The declaration of Ronald J. Carlson is attached as Exh. A; the declaration of Elizabeth

DEFENDANT'S OPPOSITION TO PLAINTIFF'S              3                    CV08-01360 DSF (PJWx)
MOTION FOR CLASS CERTIFICATION

**B. FedEx Policy is to Pay for All Time Worked**

FedEx maintains written policies in its People Manual regarding the payment of wages.  FedEx policies explicitly state that employees must be compensated for all time worked in accordance with applicable state and federal law.  (Farmer Dec. ¶5, Exh. 3; Carlson Dec. ¶6; Mgr. & Hourly Decs., *in passim*).   Similarly, FedEx explicitly prohibits employees from working without pay.  (Id.)

FedEx also maintains policies relating to recording employee hours.  FedEx requires employees using time clocks to arrive and punch-in on a time clock ***no later*** than their scheduled start times.  (Carlson Dec. ¶7; Mgr. & Hourly Decs., *in passim*). Contrary to Green's assertions, FedEx employees were not required to arrive and punch-in before their scheduled start times.  (Id.)

**C. Procedures for Time Clocks Varied**

Although FedEx required certain employees to punch-in or out on a time clock, the actual practices and procedures for this process varied throughout California.  No FedEx facilities required employees to arrive before their scheduled start times, and many locations did not regulate how early employees could voluntarily arrive for work.  (Id. ¶8).  After entering the FedEx facility, however, local procedures for punching the time clock varied and were established by the management team at each location.  (Mgr. & Hourly Decs., *in passim*).  For example, some managers prohibited employees from punching-in early.  (Id.)  Some managers permitted employees to punch-in early, but restricted early punch-in by a certain number of minutes.  (Id.) Some managers allowed employees to arrive at the facility without punching-in and permitted those employees to wait until their scheduled start time to punch-in. (Id.) Some managers allowed employees to punch-in early, but then allow them to leave the facility until their scheduled start time.  (Id.)

Mason is attached as Exh. 6 to Farmer's Dec.  The declarations of FedEx Managers and Hourly Employees ("Mgr. & Hourly Decs.") are attached as Exhs. 12-51 to Farmer's declaration.  A summary of the pertinent testimony from the Mgr. & Hourly Decs. is attached to Farmer Dec. ¶13, Exh. 11.

Despite the differences in time clock procedures, employees universally understood that they were prohibited from working without pay, and were only paid for their scheduled start to end times.  (Id.; Green Dep. pp. 34:11-35:5, 42:15-43:12; Estes Dec. ¶¶6-9, attached as Exh. 8 to Farmer's Dec.).  Furthermore, no employees were required by managers to work before their scheduled start times or after their scheduled end times without a positive adjustment to their time and pay records. (Carlson Dec. ¶¶7, 9; Mgr. & Hourly Decs., *in passim*).

## D.  FedEx's Scanning Devices and Time Keeping Systems

Because Green repeatedly references scan data and the FAMIS time keeping system in her motion, some clarification is needed on these devices and systems. During the relevant time period, FedEx used handheld electronic scanning devices that could track the movement of packages throughout the delivery process.  One device, called a Tracker, could be used to scan packages, and also to record employees' start and end times.  (Carlson Dec. ¶10).  Couriers and Service Agents (in Foster) used a Tracker for package scans, as well as to record their start, end, and break times.  (Id.)

In this case, the putative class members typically did not use a Tracker to record their time, and many did not use a Tracker at all.  (Id. ¶10; Mgr. & Hourly Decs., *in passim*).  Some putative class members used another electronic scanning device, which could track packages, but did not record employees' start, end, or break times. (Carlson Dec. ¶10).  And, some putative class members did not use any sort of scanning device.  (Id.; Mgr. & Hourly Decs., *in passim*).

FedEx's FAMIS system, referenced in Green's motion, is a data management system that records a variety of operational activities, including time entries for certain hourly employees.  (Carlson Dec. ¶9).  Employees' scheduled times were recorded in FAMIS, and if an employee chose to perform work at the managers' request before the scheduled start time, or after the end time, the manager would adjust the employee's time in FAMIS.  (Id. at ¶9; Mgr. & Hourly Decs., *in passim*).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S                5                CV08-01360 DSF (PJWx)
MOTION FOR CLASS CERTIFICATION

**E.  The Foster Data is Relevant Only to Illustrate the Type of Data FedEx Keeps**

Green relies heavily on the existence of <u>Foster</u> data and the arguments raised in the <u>Foster</u> case to establish class certification in this case.  The Ninth Circuit explained that <u>Foster</u> data was relevant to this case insofar as it demonstrates a source of data accessible by FedEx.  This data, however, has very little probative value in this case.

In <u>Foster</u>, FedEx produced electronic data relating to employees' start and end times; work tasks and breaks; and package scans, such as pick-ups and deliveries.  As explained above, the <u>Foster</u> case involved Couriers and Service Agents who used the Tracker to perform their work and record their time.  The putative class members in this case typically did not use the Tracker to record their time or did not use the Tracker at all.  (Carlson Dec. ¶10; Mgr. & Hourly Decs., *in passim*).

For those employees who actually used the Tracker, most of them used an alternate method to record their work time, such as a time clock, or a time sheet based on wall clocks or wrist watches.  (<u>Id</u>. ¶12).  As a result, a comparison between package scan data and time cards may not accurately reflect that a scan occurred during a break, or that an unpaid gap occurred between punch times and paid times.  (<u>Id</u>.)  The most obvious reason for any discrepancy is that the Tracker time stamp and the time reflected on the time clock or time sheet are not synchronized because they are based on different sources.  (<u>Id</u>.)  Such comparison also is inappropriate because multiple employees may use the same Tracker.  (<u>Id</u>. ¶13).  So, the data may not be unique to the employee, and thus, may not accurately reflect work performed.  (<u>Id</u>.)

Because using a device other than the Tracker to record time entries can generate false indications that work occurred during pre- and post-shift times and during unpaid breaks, the <u>Foster</u> data has little probative value in this case.  Alternatively, even if that type of data had probative value in this case, the possibility of false indications of work demonstrates that individual inquiries predominate.

## III. <u>LAW AND ARGUMENT</u>

The Court correctly denied class certification after Green's first motion, and the

Ninth Circuit's instructions on remand do not compel a different result.  The Court should deny Green's current motion for class certification because there is a lack of commonality, individual inquiries predominate, and Green is not a typical or adequate class representative.

## A.  **Rule 23 Standard**

As the Supreme Court made clear, "the class action is 'an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only.'" Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011) (denying class certification due to lack of commonality and predominance).   To certify a class, Green must meet the four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure, and at least one of the alternative requirements of Rule 23(b).  See Fed. R. Civ. P. 23.  In this case, Green seeks to certify the class under Rule 23(b)(3).   (Dkt. 117, pp. 20-26).   To do so, Green must demonstrate that issues common to the class predominate over issues unique to individual putative class members, and that a class action is superior to other available means to adjudicate the claims.  See Fed. R. Civ. P. 23(b)(3).  Green has the burden to establish that the Rule 23 elements have been met.  See Alcantar v. Hobart Serv., No. 11-1600, 2012 U.S. Dist. WL 5946129, *2 (C.D. Cal. Nov. 28, 2012).

Rule 23 is more than a mere pleading standard.  Dukes, 131 S.Ct. at 2551. Green has the burden to affirmatively demonstrate her compliance with the Rule.  Id. (a party "must be prepared to prove that there are in fact…common questions of law or fact, etc.").   District courts must conduct a rigorous analysis into whether the plaintiff establishes the prerequisites of Rule 23 before certifying the class.  Id.

## B.  **The Ninth Circuit's Instructions Do Not Compel a Different Result**

The Court correctly denied Green's first motion for class certification because individual issues predominated, and a class action was not a superior method of adjudication. (Dkt. 47).  As to the unpaid work claim, the Court determined that the plaintiffs did not produce common proof, and that individual inquiries for each

7

1   employee were necessary to determine what employees did between their punch-in

2   time and their start time, and between their end time and their punch-out time.  (Id.)

3       The Ninth Circuit's instructions on remand do not compel the Court to reach a

4   different conclusion here.   As explained above, the Ninth Circuit provided three

5   instructions on remand regarding (1) the analysis of "control" under Rutti to determine

6   whether putative class members' time was compensable; (2) the appropriateness of

7   Green as a class representative; and (3) the relevance of the Foster data.  See Forrand,

8   2011 WL 4269401 at *1, 2.

9       First, the determination of "control" requires an individual inquiry for each

10  employee, which defeats class certification.  This Court previously emphasized that

11  Green's data did not "take into account the possibility that an employee may not have

12  actually worked between punch-in time and start time or between the end time and

13  punch-out time."  (Dkt. 47, p. 7).  The Ninth Circuit held that whether employees

14  performed work was not determinative; rather, the inquiry must focus on FedEx's

15  "control," if any, over the employees.  Forrand, 2011 WL 4269401, *1, 2.  As fully

16  discussed below, the determination of "control" requires individual inquiries in this

17  case.  Even under the Rutti standard, the Court would be "mired in thousands of mini-

18  trials regarding payable work performed by employees."  (Dkt. 47, p. 7).

19      Second, although Green cannot be excluded as a class representative due to her

20  work as a Handler, Green still is not a proper class representative.  Green is not a

21  typical or adequate class representative for the "work during meal breaks" class

22  because her records do not reflect any electronic scans during any of her meal breaks.

23  (See Ward Dec., ¶31).  As a result, even though Green exclusively relies on electronic

24  scans to establish her class claim, she has no data to prove her individual claim.

25      Third, the Foster data has little probative value in this case, as the Court

26  correctly noted, because the Foster data pertained to Couriers and Customer Service

27  Agents, yet this case excludes Couriers and Customer Service Agents.  (Dkt. 47, n. 7).

28  The Ninth Circuit stated that the Foster data is relevant only insofar as it demonstrates

1  that FedEx has access to the same source of data for putative class members in this

2  case.    Forrand, 2011 WL 4269401, *2.    Significantly, the Foster data is

3  distinguishable from the facts and circumstances in this case and cannot serve as

4  common proof in this case.  (See Ward Dec. ¶¶25-32; Carlson Dec. ¶11, Exh. 1).

5  Green's current motion for class certification does not offer data specific to the

6  putative class and fails to establish any other source of common proof.

7      Because the Ninth Circuit's instructions on remand do not compel a different

8  result, the Court should deny Green's motion for class certification again.

9  **C.  Green's Proposed "Unpaid On-The-Clock" Class Should Not Be Certified**

10     Green's first class, those California employees who were not paid from their

11  punch-in to punch-out times, should not be certified because it lacks commonality,

12  predominance, and superiority.

13        **1.  Green Cannot Demonstrate Commonality**

14     Green seeks to certify a class of all California employees who were paid from

15  their start times to their end times, rather than their punch-in times to their punch-out

16  times.    Green cannot establish commonality for this class because she cannot

17  demonstrate a common policy or practice that violates the law and that generates

18  common answers.

19     Commonality requires questions of law or fact common to the class.  Fed. R.

20  Civ. P. 23(a)(2).  The Supreme Court's decision in Dukes represents a departure from

21  the more permissive approach to establishing commonality.    Under Dukes,

22  "commonality requires the plaintiff to demonstrate that the class members 'have

23  suffered the same injury,' which does not mean merely that they have all suffered a

24  violation of the same provision of law."  Dukes, 131 S.Ct. at 2551.  Instead, the

25  "claims must depend on a common contention" that is "of such a nature that it is

26  capable of classwide resolution – which means that the determination of its truth or

27  falsity will resolve the issue that is central to the validity of each one of the claims in

28  one stroke." Id. (plaintiff must show significant proof that Wal-Mart operated under a

1  general policy of discrimination).

2        Accordingly, to show commonality under <u>Dukes</u>, "what matters to class

3  certification . . . is not the raising of common questions – even in droves – but, rather

4  the capacity of a classwide proceeding to generate **common answers** apt to drive the

5  resolution of the litigation." <u>Id.</u> (emphasis added); <u>Wang v. Chinese Daily News, Inc.</u>,

6  No. 08-55483, 2013 U.S. App. WL 781715, *3 (9th Cir. Mar. 4, 2013) (without

7  evidence that the entire class was subjected to the same discriminatory practice, there

8  is no common question to the class).

9        In this case, Green cannot demonstrate a common policy applicable to the

10  putative class that violates the law.  FedEx's written policy is to pay employees for all

11  hours worked, and to prohibit employees from working without pay.  (Farmer Dec.

12  ¶5-6, Exhs. 3-4; Carlson Dec. ¶6-7, 9; Mgr. & Hourly Decs., *in passim*).  Green

13  cannot demonstrate a common policy by FedEx to refuse to pay employees for time

14  the employees were under FedEx's control.  <u>See Wang</u>, 2013 U.S. App. WL 781715,

15  *3-4 (plaintiff must show significant proof that the company operated under a general

16  policy that violated California labor laws).

17        Green incorrectly suggests that FedEx maintained a policy requiring employees

18  to punch-in early and remain in the FedEx facility.  (<u>See e.g.</u>, Dkt. 117, p. 7, 8, 10,

19  13).  Declarations submitted by FedEx demonstrate that (1) employees were not

20  required to arrive early, to punch-in early, or to work before their scheduled start time;

21  and (2) employees were not required to stay late or work after their scheduled end

22  time (Carlson Dec. ¶6, 7; Mgr. & Hourly Decs., *in passim*).  Several declarants

23  testified that they did not punch-in early, were not required to punch-in early, and if

24  they did punch-in early, they were prohibited from working.  (Mgr. & Hourly Decs.,

25  *in passim*).  The declarants who punched-in early were free to use their time for their

26  own purposes, including playing ping pong, or leaving the facility to work out or to

27  get a meal at a restaurant. (<u>Id.</u>)  Therefore, these employees were not under FedEx's

28  control under Rutti.  <u>See e.g.</u>, <u>See's Candy Shops, Inc. v. The Superior Court of San</u>

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
       10        CV08-01360 DSF (PJWx)

1   Diego, 210 Cal. App.4th 889, 910-11, 148 Cal. Rptr. 3d 690 (Ct. App. Cal. 2012) (no

2   control where employees were free to use time effectively for their own purposes).

3   Only Green testified that she was required to punch-in early, but she admitted that no

4   manager directed her or other employees to stay late, and she understood that she was

5   paid from her scheduled times.  (Green Dep. pp. 80:6-81:2).[2]

6       Green's reliance on the testimony of Ronald J. Carlson, John Chisum, and Ara

7   Karamian does not support her commonality argument.  (See Dkt. 117, pp.  7, 10, 14-

8   15).  First, Green misrepresents Carlson's testimony; her citation to that testimony

9   does not support the assertion that employees were required to punch-in early or that

10  they were under FedEx's control after punch-in.

11      Second, Chisum's testimony is irrelevant because it relates to non-California

12  aircraft mechanics who used a different time keeping system.  (Chisum Dep. p. 6:8-

13  7:21, 9:13-10:12, 11:10-25, 20:14-17).  Furthermore, the subclass of mechanics and

14  Plaintiff, Daniel Forrand, have been dismissed from this case.  (See Dkt. 51; Forrand,

15  2011 WL 4269401, *1).

16      Third, Karamian, a former manager terminated for time card falsification,

17  admitted that he did not supervise employees prior to their scheduled start times, and

18  admitted that FedEx policy prohibits employees from working without pay.  Although

19  Karamian testified to specific isolated instances of employees working off-the-clock,

20  he can only offer anecdotal testimony of employees he supervised, and he admits that

21  such conduct was contrary to FedEx policy.  (Karamian Dep. pp. 26:4-5, 51:6-8, 66:2-

22  68:1, 71:6-20, 77:25-78:22).  Therefore, Karamian's testimony does not establish

23  commonality.   To the contrary, it supports FedEx's position that individualized

24  inquiries are necessary to determine the merits of Green's claims.

25      Green's own testimony does not support her commonality argument.  Green

26  testified that many of her coworkers did not punch-in until their scheduled start time,

27

28  [2] The deposition testimony of Green, Karamian and Chisum is attached to Farmer Dec.,
    Exhs. 8-10, respectively.

1  and others who did punch-in before their scheduled start time performed no work.

2  (Green Dep. pp. 35:2-36:5; 44:18-45:20).  Green explained that these employees did

3  nothing because they did not care.  (Id.)  Green's own testimony that she regularly

4  punched-in 10-15 minutes early is not supported by her time records, which

5  demonstrate that she punched-in more than 10 minutes early only 6.7% of the time.

6  (Ward Dec. ¶¶18-23, Exhs. 3, 4).  Additionally, her records reflect that she punched-

7  out on time, or up to four minutes later, on 89.7% of her workdays.  (Id.)  Therefore,

8  Green's own testimony and time cards support the conclusion that FedEx did not have

9  a common policy or practice applicable to the putative class that violates California

10  wage and hour laws.

11         The proof demonstrates that FedEx did not have a policy or practice common to

12  the class to "control" employees prior to their start time such that their time was

13  compensable under California law.  Relying on Dukes, several California district

14  courts have denied class certification for lack of commonality, because the employer

15  did not have a company policy applicable to the putative class.  See e.g., Ordonez v.

16  Radio Shack, Inc., No. 10-7060, 2013 U.S. Dist. WL 210223, *8 (C.D. Cal. Jan. 17,

17  2013) (the plaintiff offered insufficient evidence that any alleged off-the-clock work

18  was due to a standardized employment practice, rather than a product of the vagaries

19  of the store an employee worked in, the time of year, or the manager who was in

20  charge; the plaintiff's claims are inherently premised upon the disparate employment

21  settings among its putative members); Alcantar, 2012 U.S. Dist. WL 5946129, *3

22  (absent proof of a company-wide policy, the commonality requirement is not met);

23  Cortez v. Best Buy Stores, LP, No. 11-5053, 2012 WL 255345, *9 (C.D. Cal. Jan. 25,

24  2012 (same); York v. Starbucks Corp., No. 08-7919, 2011 U.S. Dist. WL 8199987,

25  *28-29 (C.D. Cal. Nov. 23, 2011) (where a company had a clear and unambiguous

26  corporate policy that all employees be paid for work performed, and plaintiff failed to

27  present evidence of a corporate-wide practice of forcing employees to work off-the-

28  clock, resolution of plaintiff's claim would require individualized proof).

In addition to a lack of common policy or practice that violates the law, as explained above, declarations submitted by FedEx demonstrate varying and individualized differences in putative class members' circumstances as they relate to punch-in times and scheduled start times, as well as punch-out times and scheduled end times. These varying circumstances demonstrate that employees were not under FedEx's control based on punch times. As the Supreme Court explained in Dukes, "dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Dukes, 131 S.Ct. at 2551. Several California courts have denied class certification for lack of commonality where there was conflicting anecdotal evidence. See e.g., Garcia v. Sun Pacific Farming Cooperative, No. 06-0871, 2008 U.S. Dist. WL 2073979, *11 (E.D. Cal. May 14, 2008) (district court held that the conflicting anecdotal evidence demonstrated significant differences between employees, and therefore the plaintiff was unable to demonstrate commonality); Rosales v. El Rancho Farms, No. 09-707, 2012 U.S. Dist. WL 292977, 3-4 (E.D. Cal. Jan. 31, 2012) (same).

Finally, FedEx's requirement that managers adjust employees' time if they begin work early supports denial of certification. See Cornn v. United Parcel Service, Inc., No. C03-2001, 2005 U.S. Dist. WL 2072091, *1, 5 (N.D. Cal. Aug. 26, 2005) (noting that UPS's policy and practice of adjusting scheduled times and paying employees for work they are instructed to do prior to their scheduled shifts supported denial of certification).

Green cannot establish commonality under Rule 23(a). FedEx policy was to pay for all hours worked in compliance with state and federal law, and Green has not established any common policy or practice which prohibits the payment of wages for time spent by employees under FedEx's control. Dissimilarities among the class also illustrate the lack of common issues.

## 2.  **Green Cannot Demonstrate Predominance or Superiority**

Even if Green could establish commonality under Rule 23(a), she cannot

demonstrate that issues common to the class predominate over issues unique to individual putative class members, and that a class action is superior to other available means to adjudicate the claims.  For employee time to be compensable, the employee must be under the "control" of FedEx.  The determination of control requires an individualized inquiry for each putative class member.

The predominance requirement of Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a).  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).  The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.  Id. at 623.  Courts must examine the substantive issues raised by the plaintiff, and then inquire into the proof relevant to each issue. Jimenez v. Domino's Pizza, Inc., 238 F.R.D. 241, 251 (C.D. Cal. 2006).  Class certification is inappropriate if, after resolving common issues, substantial individualized issues remain.  Sepulveda v. Wal-Mart Stores, Inc., 237 F.R.D. 229, 247-48 (C.D. Cal. 2006).

### (a.)   A determination of control requires individualized inquiries

Even if there are issues common to the class, individual issues predominate over those issues.  Under California law, employees must be compensated for all time "during which an employee is subject to the control of an employer."  Rutti, 596 F.3d at 1061 (citing Morillion v. Royal Packing Co., 22 Cal.4th 575, 578, 94 Cal. Rptr.2d 3 (Cal. 2000)).  In Rutti, the court held that employees who were *required* to drive company vehicles directly from home to work, and who were not permitted to use cellular telephones for personal use during that commute, were under their employer's control during that commute.  Id. at 1061-62.  Similarly, in Morillion, the California Supreme Court held that employees *required* to ride company buses to and from their worksite were subject to their employer's control, and therefore that *compulsory* commuting time was compensable.  Morillion, 22 Cal.4th at 595.  Morillion distinguished cases where the "employees were free to choose – rather than required –

14

1  to ride their employer's buses to and from work," and considered that a dispositive,

2  distinguishing fact. Id. at 589, n.5.

3      Following Morillion, the California Court of Appeals determined that

4  commuting time was not compensable, where employees were permitted, but not

5  required, to take the company shuttle to work. See Overton v. Walt Disney Co., 136

6  Cal. App.4th 263, 266, 38 Cal. Rptr.3d 693 (Cal. App. 2006). In applying Morillion,

7  the court determined that, because the employees were not required to utilize the

8  company shuttle, and instead were permitted to use personal transportation, they were

9  not under the employer's control and their commute time was not compensable. Id. at

10  271-72. Indeed, in Rutti, the Ninth Circuit distinguished Overton, because employees

11  were not required to ride the bus. Rutti, 596 F.3d at 1062, n.2; see also Alcantar, 2012

12  U.S. Dist. WL 5946129, *1, 3) (determination of control turns on whether the plaintiff

13  has the option of taking employer-provided transportation).

14      Thus, the determinative factor with respect to whether an employee is entitled

15  to compensation is "the level of the employer's control over its employees." Rutti,

16  596 F.3d at 1061. Or stated another way, whether the employee was engaged to wait,

17  which is compensable, or waiting to be engaged, which is not compensable. Id. at

18  1055, 1058. As these cases demonstrate, control necessarily is an individualized

19  inquiry subject to the varying circumstances of each putative class member.

20      **(b.)   Punching-in does not automatically establish control**

21      The proof in this case demonstrates that the determination of whether

22  employees were under FedEx's control after their punch-in time, but before their

23  scheduled start time, and after their scheduled end time but before their punch-out

24  time requires an individual inquiry for each putative class member, which consists of

25  over 3.5 million shifts. (See Ward Dec. ¶17). Consistent with the Court's original

26  ruling, there remains no common proof for evaluating control and whether employees

27  are entitled to compensation, and therefore, the Court would be mired in thousands of

28  mini-trials regarding payable work performed by the putative class members.

1    Green incorrectly contends that employees automatically were under FedEx's
2    control once they punched-in on a time clock.  (Dkt. 117, p. 8).  Green cites no legal
3    authority to support her theory.  (Id.)  To the contrary, at least one federal regulation
4    demonstrates that control is not established simply by virtue of a time stamp appearing
5    on a time card.   The U.S. Department of Labor Regulations provide that ". . .
6    employees who voluntarily come in before their regular starting time or remain after
7    their closing time, do not have to be paid for such periods provided, of course, that
8    they do not engage in any work.   Their early or late clock punching may be
9    disregarded . . . ." 29 C.F.R. § 785.48.  Furthermore, the case law demonstrates that
10   the simple act of punching-in does not initiate control of employees.  To the contrary,
11   these cases demonstrate that, because FedEx employees *were not required* to punch-in
12   early, they were not under FedEx's control if they did punch-in early.  The cases also
13   demonstrate that, if employees are *free to use their time for their own purposes* after
14   they punched-in but before their shifts started, they were not under FedEx's control.

15   Three recent cases with facts similar to this case demonstrate that punching-in,
16   alone, does not establish control.  These cases also demonstrate that when employees
17   are *permitted but not required* to punch-in early, they are not under their employer's
18   control.  First, in Alonzo v. Maximus, Inc., 832 F. Supp.2d 1122 (C.D. Cal. 2011), the
19   district court held that punching-in for work does not establish control.  The plaintiffs,
20   relying on punch-in data, asserted that all on-premises time was compensable under
21   Morillion.  The district court rejected that theory, and granted summary judgment for
22   the employer because there was no evidence that the employees were required to
23   arrive early, and there was no evidence that the employees performed compensable
24   work before their shifts, and therefore, the plaintiffs could not establish control under
25   Morillion.  See Alonzo, 832 F. Supp.2d at 1129.

26   Second, in Cornn, a case factually comparable to this one, the district court held
27   that gap time between employees' punch-in times and start times was not
28   compensable.  The UPS employees in Cornn were permitted to punch-in early, and

DEFENDANT'S OPPOSITION TO PLAINTIFF'S                16                    CV08-01360 DSF (PJWx)
MOTION FOR CLASS CERTIFICATION

1    then they would gather supplies, sort packages, and do other pre-work activity before

2    their scheduled start time.  Cornn, 2005 U.S. Dist. WL 2072091, *1-2.  The district

3    court held that individual issues predominated as to whether the activities performed

4    before their scheduled start times were compensable.  Id. at *7.  And, if the time was

5    compensable, individual inquiries were required to determine the amount of time

6    worked.  Id.  Like Cornn, individual inquiries for each FedEx employee are necessary

7    to determine if the employees were under FedEx's control.

8         Third, in See's Candy Shops, Inc., the California Court of Appeals reversed

9    summary judgment for the plaintiff, and provided instructions to the trial court on the

10   issue of control as it relates to compensable time.  The employees in that case were

11   permitted to punch-in ten minutes early, but were paid from their start times.  See's

12   Candy Shops, 210 Cal. App.4th at 893.  The employees, however, were not permitted

13   to work during that "grace period" and were free to use the time for their own personal

14   activities.  Id.  And, if an employee performed work during the grace period, his

15   manager would adjust his time records.  Id.  Relying on Morillion, the court stated

16   that, since there was no evidence on whether employees were prevented from using

17   their time effectively for their own purposes, there was no evidence that the employer

18   exerted control over the employees.  Id. at 910-11.

19        Green incorrectly suggests that Morillion requires FedEx to pay employees

20   from the time they clock in to the time they clock out.  (Dkt. 117, p. 6).  To the

21   contrary, Morillion, Overton, Alcantar, Alonzo, Cornn, and See's Candy Shops stand

22   for the proposition that the employees' *freedom of choice* was the decisive factor in

23   determining whether the employees were subjected to the employer's control.

24   Morillion, 22 Cal.4th at 578, 588-89, n.5; Overton, 136 Cal. App.4th at 271-72;

25   Alcantar, 2012 U.S. Dist. WL 5946129, *1, 3; Alonzo, 832 F. Supp.2d at 1129;

26   Cornn, 2005 U.S. Dist. WL 2072091, *1-2; See's Candy Shops, 210 Cal. App. 4th at

27   910-11.  By contrast, FedEx employees were not required to punch-in early.

28        In addition to the fact that FedEx employees typically were permitted but not

DEFENDANT'S OPPOSITION TO PLAINTIFF'S          17          CV08-01360 DSF (PJWx)
MOTION FOR CLASS CERTIFICATION

1   required to punch-in early, FedEx's declarations demonstrate that there was ***a great***
2   ***degree of variance*** as to what employees did after they punched-in, and thus a need
3   for individual inquiries as to whether FedEx exerted sufficient control over each
4   employee when they punched-in early.   The proof demonstrates that time clock
5   procedures varied greatly among employees.   Employees' activities before their
6   scheduled times differed from employee to employee, job to job, location to location,
7   manager to manager, and even day to day.  (Mgr. & Hourly Decs., *in passim*).

8        Declarations provided by FedEx demonstrate that, when employees punched-in
9   early, they were free to use the time for their own purposes.  (Id.)  For example, they
10  were permitted to leave the facility for coffee, to sleep in their personal vehicle, and to
11  play ping pong.  (Id.)  Illustrative of the lack of control at some facilities, some San
12  Diego employees would work-out at a private gym after punching-in.  (Declaration of
13  Angela Funches, ¶6, attached as Exh. 13 to Farmer's Dec.).   The San Diego
14  employees were unsupervised prior to their scheduled start time, and therefore, were
15  free to do what they wanted.  (Id.)  Since these employees were not required to punch-
16  in early, were free to leave following punching-in, and were otherwise free to use their
17  time for their own purposes, whether any putative class members were under FedEx's
18  control requires individual inquiries.  See Cornn, 2005 U.S. Dist. WL 2072091, *4-6;
19  Alonzo, 832 F. Supp.2d at 1129; See's Candy Shops, 210 Cal. App.4th at 910-11.

20       Green's argument that FedEx time clock procedures fail to serve as an integrity
21  check if employees are free to leave does not establish that employees ***were not*** free to
22  leave after they punched-in.  (Dkt. 117, p. 10).   It only demonstrates the need for
23  subsequent integrity checks, which FedEx maintained.   Indeed, time clock data was
24  only one tool among many used to investigate tardiness and time card falsification.
25  (Carlson Dec. ¶14; Funches Dec. ¶7).  While a few managers did require employees to
26  remain at the facility after they punched-in, the determination of control nonetheless
27  requires an individualized inquiry.  (See e.g., Declarations of Cynthia Brown, ¶¶6-8,
28  Michael Northington, ¶¶7-8, Barbara Lowe, ¶5, attached to Farmer Dec., Exhs. 12, 17,

and 37, respectively).  Several of these declarants testified that, like the employees in Overton, Alonzo, and See's Candy Shops, they were not required to punch-in early; that, if they did punch-in early, they could attend to personal business; and that they were prohibited from working until their scheduled start time.  (Id. ¶6-7; Mgr. & Hourly Decs., *in passim*).  And, like See's Candy Shops, managers would adjust employees' time for work performed before their scheduled start time.  See Cornn 2005 U.S. Dist. WL 2072091, *1, 5 (noting that UPS's policy of adjusting start times and paying employees for work they are instructed to do prior to their scheduled shifts supported denial of certification).

The proof in this case demonstrates that the simple act of punching-in does not establish control; rather, individual inquiry is required for each employee to determine if they were under FedEx's control after punch-in.  Consistent with the Court's original ruling, there is no common proof for evaluating control and whether employees are entitled to compensation, and thus, the Court would be mired in thousands of mini-trials regarding payable work performed by the employees.

### (c.)   Class treatment is not a superior method of adjudication

Green cannot demonstrate superiority because of "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).  Green has failed to offer any manageable trial plan that would adequately protect FedEx's due process rights.  See Amchem Prods., Inc., 521 U.S. at 613, 615; Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190 (9th Cir. 2001) (upholding denial of class certification where "there was no manageable trial plan adequate to deal with individualized issues and variances in state law"); Pryor v. Aerotek Scientific, LLC, 278 F.R.D. 516, 537 (C.D. Cal. 2011) (absent a manageable trial plan, the court cannot envision how it would conduct hundreds of individual inquiries to determine if an employee's recorded time was less than the actual hours worked).

In its original order denying class certification, the Court stated that with "no common method of proof for evaluating how much time class members worked

DEFENDANT'S OPPOSITION TO PLAINTIFF'S                    19                    CV08-01360 DSF (PJWx)
MOTION FOR CLASS CERTIFICATION

1  without compensation, the Court will again be mired in thousands of mini-trials
2  regarding payable work performed by employees." (Dkt. 47, p. 7).

3      This action remains unmanageable as a class given the predominance of
4  individual issues necessary to establish liability.  The Court would be required to
5  conduct separate mini-trials for each putative class member to determine whether
6  employees were required to punch-in early, or punch-out late; whether they were
7  under management supervision and what their managers' expectations were; what
8  they did during the time between punching-in or -out and their scheduled start/end
9  time; whether they were free to use their time for their own purposes; the amount of
10  time spent under FedEx's control, if any; and whether the time spent was insignificant
11  or de minimis, and thus not compensable.[3]

12      Answering each of these questions involves individualized issues, including the
13  need for credibility determinations of the parties' respective witnesses, particularly in
14  light of Green's admissions that she did not expect to be paid for punching-in early
15  and never asked a manager to adjust her pay.  (Green Dep. pp. 42:15-43:12. 44:7-16).

16      As a result of the need for individualized factual and credibility issues, Green
17  cannot establish predominance and superiority.  Because Green cannot establish
18  commonality under Rule 23(a), or predominance and superiority under Rule 23(b)(3),
19  the Court should deny Green's motion to certify the "Unpaid Off-the-Clock" class.

20      **3.  Foster and Post-Foster Changes are not Determinative**

21      Green frequently refers to the Foster case; however, the facts and circumstances
22  in that case are distinguishable from this case.  Foster was a state trial court decision
23  in 2006, issued before the California Supreme Court's meal and rest break decision in

24  _____
[3]  See Lindow v. United States, 738 F.2d 1057, 1062-1063 (9th Cir. 1984) (eight minutes
25  spent by employees reading a log book and exchanging information, even if not preliminary,
   was de minimis and therefore not compensable).  Elements of the de minimis defense
26  requiring an individualized factual inquiry include:  (1) the practical administrative difficulty
   of recording the additional time; (2) the aggregate amount of compensable time; and (3) the
27  regularity of the additional work.  Id.; see also Cervantez v. Celestica Corp., 618 F. Supp.2d
   1208, 1215-17 (C.D. Cal. 2009) (applied de minimis defense to California state claims)

1   Brinker Restaurant Corp. v. The Superior Court of San Diego Co., 53 Cal.4th 1004,
2   139 Cal Rptr.3d 315 (Cal. 2012).   Contrary to Brinker, the Foster court found that
3   FedEx was required to monitor its employees during breaks to ensure that no work
4   was performed. (Farmer Dec. Exh.  5 at p. 8).   Additionally, the Foster court found
5   that one instance of failure to pay for services rendered results in class liability
6   without any further inquiry or individualized proof of liability. (Id. at p. 10). This
7   nominal standard is inconsistent with the rigorous Rule 23 analysis required under
8   Dukes.   Lastly, even the Foster court recognized that the electronic scan records did
9   not establish what the employees did prior to their start times, and therefore were
10  problematic to the plaintiffs' case. (Id. at pp. 8, 9).

11          Green also cites to the fact that FedEx implemented changes to its timekeeping
12  system following the Foster case, and in doing so argues that FedEx's changes are
13  conclusive proof of wrongdoing.  (See e.g., Dkt. 117, pp. 9, 10-15, 22, 26).   When
14  measures are taken that would have made an earlier harm or injury less likely to occur,
15  evidence of the subsequent remedial measures is not admissible to prove culpable
16  conduct. See Fed. R. Evid. P. 407.  Moreover, FedEx's changes do not demonstrate a
17  common policy that can generate common answers, or that individual inquires do not
18  predominate.   Therefore, the state trial court's decision in Foster, and FedEx's
19  changes, are not determinative of the appropriateness of class certification in this case.

20  **D.  Green's Proposed "Working Meal Break" Class Should Not Be Certified**

21          Green's second class, those California employees who worked during their
22  unpaid meal breaks, should not be certified because it lacks commonality,
23  predominance, and superiority.  Furthermore, Green is not a typical or adequate class
24  representative.

25          **1.  Green Cannot Demonstrate Commonality**

26          Green seeks to certify a class of employees who worked during their unpaid
27  meal breaks.  Green cannot establish commonality for this class because she cannot
28  demonstrate that the putative class members have suffered the same injury based on a

common policy or practice.  Indeed, there is no proof of a company-wide policy requiring employees to work during their meal breaks.  To the contrary, the proof demonstrates that FedEx policy explicitly prohibits working during breaks.  Absent a company-wide policy, Green cannot demonstrate commonality.  <u>See e.g.</u>, <u>Dukes</u>, 131 S.Ct. at 2550-57 (recognizing that there was no company-wide policy, and finding no commonality); <u>In re Autozone</u>, No. 10-2159, 2012 U.S. Dist. WL 6679983, *12 (N.D. Cal. Dec. 21, 2012) (finding that the reasons for any off-the-clock work varied; in the absence of a systematic practice forcing employees to work without pay, resolving the claim would require individualized proof that she worked, why she worked and whether the managers had reason to know that she was working without pay); <u>Ordonez</u>, 2013 U.S. Dist. WL 210223, *8; <u>Alcantar</u>, 2012 U.S. Dist. WL 5946129, *3; <u>Cortez</u>, 2012 WL 255345, *9; <u>York</u>, 2011 U.S. Dist. WL 8199987, *28-29.

Green relies on electronic scan data to prove this claim.  However, there is no single standard time keeping procedure among the putative class members.  For instance, some putative class members did not use Trackers or other scanning devices at all to perform their jobs.  (Carlson Dec. ¶10; Mgr. & Hourly Decs., *in passim*).  As a result, there would be no electronic scan data to establish their claims.

In the absence of a company-wide policy requiring employees to work during meal breaks, and in the absence of any common proof, Green cannot establish commonality for this class.

## 2. <u>Green Cannot Establish Predominance or Superiority</u>

Even if Green could establish commonality under Rule 23(a), she cannot demonstrate that issues common to the class predominate over issues unique to individual class members, and that a class action is superior to other available means to adjudicate the claims.

According to <u>Brinker</u>, employers are not required to "police" meal breaks to ensure employees are not working.  53 Cal.4th at 1052.  Employers only are required to provide unpaid meal breaks by relieving employees of all duties; they do not need

1   to ensure employees actually take meal breaks.  <u>Id.</u>  Significant to this case, under

2   <u>Brinker</u>, liability for time worked during meal breaks requires proof that the employer

3   knew or should have known that employees were working during their breaks.  <u>Id.</u>

4        For Green to prevail on the claims of this class, she must prove that FedEx

5   knew or should have known that the employees of this class were working during

6   their meal breaks.  This requirement necessitates individualized inquiries, particularly

7   in the absence of a company-wide policy.  Indeed, in <u>Brinker</u>, the California Supreme

8   Court rejected class certification where the plaintiff could not demonstrate how the

9   company would have known of the work during meal breaks in the absence of a

10  uniform policy or practice.  <u>Id.</u> at 1051-52.  The <u>Brinker</u> court explained that

11  individual issues would predominate, requiring an employee-by-employee inquiry of

12  who worked off-the-clock, how long they worked, and whether the company knew or

13  should have known of the employees' work.  <u>Id.</u>

14       The result is the same here for two reasons.  First, electronic scan records do not

15  reflect how much time was worked in relation to each scan.  (Ward Dec. ¶16; Carlson

16  Dec. ¶15; Mgr. & Hourly Decs., *in passim*).   Second, as explained above, the

17  employees' noted break times were not reliable indicators to determine whether a scan

18  actually occurred during a break.  (Carlson Dec. ¶¶12-13, 15-16; Mgr. & Hourly

19  Decs., *in passim*).

20       Third, the various data needed to locate scans during breaks was not available

21  to managers without an excessive administrative burden on the operations.  (Carlson

22  Dec. ¶¶15-16).   Further, the various reports are insufficient proof that a scan

23  represents time worked.  (<u>Id.</u>)  Thus, without a corresponding investigation into the

24  data and time cards, a manager would not know whether an employee worked during

25  the meal break or the amount of time spent working.   (<u>Id.</u>; Ward Dec. ¶16).

26  Therefore, Green cannot establish that FedEx knew or should have known of work

27  performed during meal breaks without an individual inquiry for each putative class

28  member.  To the extent that managers previously discovered scans during breaks, such

1 | as when investigating a customer inquiry, an individual inquiry still would be
2 | necessary to determine when these instances occurred, whether the scan was accurate
3 | and if so, whether the employee was paid for whatever time they spent working during
4 | the break.  (Carlson Dec. at ¶17).

5 |      In its original order denying certification, this Court applied the correct standard
6 | later approved in <u>Brinker</u>.  (Dkt. 47, pp. 4-5).  The Court correctly held:

> As California law only requires FedEx to make meal and rest breaks
> available to employees, Plaintiffs can prevail only if they show that
> FedEx's policies deprived them of those breaks…. Members of the
> purported class have some 65 different job titles and 100 job
> classifications.  Amid this great variety, Plaintiffs fail to propose a
> method of common proof that would show that FedEx's policies
> prevent more than 21,000 class members from taking meal and rest
> breaks "regardless of their individual circumstances."

(Id.)  Similarly, this Court denied certification in <u>Brown v. Federal Express Corp.</u>, 249
F.R.D. 580, 587 (C.D. Cal. 2008), a case brought by FedEx Couriers alleging missed
meal breaks, finding that individual issues predominate.

     Here, Green seeks to represent the same diverse job categories this Court
previously rejected (nearly 15,000 current and former employees, encompassing 60
job titles with distinct job descriptions).  (Ward Dec. ¶¶10-11; Farmer Dec. ¶¶3-4,
Exhs. 1-2).  The characteristics of each job type vary significantly as to job duties,
location, amount of managerial supervision, whether or not employees leave a facility,
package volume and size, customer demands and individual manager expectations.
(Carlson Dec. ¶5; Mason Dec. ¶¶8, 14-35, 44-50, 54, 59; Mgr. & Hourly Decs., *in
passim*).  Whether employees were forced to work during their break due to their
workload depends on their individual circumstances, requiring individual inquiries.

     Because Green is required to prove that FedEx knew or should have known that
the putative class members worked during unpaid meal breaks, individual issues
predominate over classwide issues, and a class action would not be a superior method

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

24

CV08-01360 DSF (PJWx)

of adjudication.  Therefore, class certification is inappropriate.

### 3.  Green is not a Proper Class Representative

Green is not a proper class representative for this proposed class because she did not have any electronic scans during her unpaid meal breaks.  Therefore, although she relies on the use of electronic scan data to prove the class claims, she cannot use the electronic scan data to prove her individual claims.

A named plaintiff must have the requisite personal stake in the outcome, and be a member of the class she seeks to represent at the time the class is certified.  O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members).  It is Green's burden to establish that she personally has been injured, not that injury has been suffered by other, unidentified members of the class to which she belongs and purports to represent.  Rosales, 2012 U.S. Dist. WL 292977, *2.

Green's records reflect no scans during her meal break periods.  (Ward Dec. ¶31).  As a result, Green cannot meet her burden of proving she suffered the same injuries as putative class members who may have scans during their breaks, or that she has any stake in the outcome of a claim for work during unpaid breaks based upon scan records.  Therefore, Green is not a proper class representative.

## IV.  CONCLUSION

Based upon the foregoing, FedEx respectfully requests that the Court deny Plaintiff's Motion for Class Certification.

Dated: March 15, 2013                    Respectfully submitted,

By:   /s/P. Daniel Riederer
P. Daniel Riederer
FEDERAL EXPRESS CORPORATION
Counsel for Defendant

1

## PROOF OF SERVICE

2

3

**STATE OF TENNESSEE, COUNTY OF SHELBY**

4

I declare that on March 15, 2013, I electronically filed the following document:

5

6

**DEFENDANT FEDERAL EXPRESS CORPORATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

7

8

9

10

with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record who receive such filings (Andre E. Jardini and Michael S. Duberchin), and I have served the document by overnight letter to the attorney who does not receive such notification (Glen R. Bregman).

11

12

**Glen Robert Bregman, Esq.**

13

**Law Offices of Glen Robert Bregman**
**16633 Ventura Blvd., Suite 1240**

14

**Encino, CA  91436**

15

16

                                        /s/P. Daniel Riederer

17

Doc#983474

18

19

20

21

22

23

24

25

26

27

28